IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 9:23-cv-80963

JESSE A. ERDLE, as Trustee of the JACK A. ERDLE IRREVOCABLE TRUST dated December 18, 2012 f/b/o CHLOE ERDLE, JESSE A. ERDLE, as Trustee of the JACK A. ERDLE IRREVOCABLE TRUST dated December 18, 2012 f/b/o HARRISON REED ERDLE, and JESSE A. ERDLE, as Trustee of the JACK A. ERDLE IRREVOCABLE TRUST dated December 18, 2012 f/b/o SAMANTHA ARIEL ERDLE,

    Plaintiffs,

v.

JPMORGAN CHASE BANK, N.A., and PATRICK KELLY,

    Defendants.
_____/

## COMPLAINT

Plaintiffs, JESSE A. ERDLE, as Trustee of the JACK A. ERDLE IRREVOCABLE TRUST dated December 18, 2012 f/b/o CHLOE ERDLE, JESSE A. ERDLE, as Trustee of the JACK A. ERDLE IRREVOCABLE TRUST dated December 18, 2012 f/b/o HARRISON REED ERDLE, and JESSE A. ERDLE, as Trustee of the JACK A. ERDLE IRREVOCABLE TRUST dated December 18, 2012 f/b/o SAMANTHA ARIEL ERDLE, by and through undersigned counsel, hereby sues Defendants, JPMORGAN CHASE BANK, N.A., and PATRICK KELLY, and states the following:

### Nature of the Action

1. This is an action for damages against Defendants JPMorgan Chase Bank, N.A. and Patrick Kelly. Defendants JPMorgan Chase Bank, N.A. and Patrick Kelly were negligent and grossly negligent with regard to the security and maintenance of the Erdle Children Trusts (as defined below), resulting in significant damages of at least $762,000 combined. Lastly, Defendant Patrick Kelly also breached his fiduciary duties owed to the Erdle Children Trusts.

**Parties**

2. Plaintiff, JESSE A. ERDLE, as Trustee of the JACK A. ERDLE IRREVOCABLE TRUST dated December 18, 2012 f/b/o CHLOE ERDLE (the "Chloe Erdle Trust"), resides in Palm Beach County, Florida, and maintains the Chloe Erdle Trust from same location.

3. Plaintiff, JESSE A. ERDLE, as Trustee of the JACK A. ERDLE IRREVOCABLE TRUST dated December 18, 2012 f/b/o HARRISON REED ERDLE (the "Harrison Erdle Trust"), resides in Palm Beach County, Florida, and maintains the Harrison Erdle Trust from same location.

4. Plaintiff, JESSE A. ERDLE, as Trustee of the JACK A. ERDLE IRREVOCABLE TRUST dated December 18, 2012 f/b/o SAMANTHA ARIEL ERDLE (the "Samantha Erdle Trust"), resides in Palm Beach County, Florida, and maintains the Samantha Erdle Trust from same location.

5. Defendant, JPMORGAN CHASE BANK, N.A. ("JPMC"), is a national banking association, with its headquarters located in Columbus, Ohio.

6. Defendant, PATRICK KELLY ("Kelly"), upon information and belief, is an individual over the age of eighteen who resides in New York.

**Jurisdiction and Venue**

7. This Court has subject matter jurisdiction pursuant to 28 U.S.C. §1332. The amount in controversy exceeds $75,000, and the Plaintiffs maintain complete diversity from the Defendants.

8. This Court has personal jurisdiction over the Defendants pursuant to Florida's Long Arm Statute, §48.193, Fla. Stat., as follows:

   a. Defendants JPMC operates, conducts, engages in and carries on a business or business ventures within the state of Florida.

   b. Defendants JPMC and Kelly committed tortious acts within this state, as alleged herein.

   c. Defendants JPMC and Kelly caused injury to persons in this state arising out of an act or omission by Defendants outside this state, and at the time of same injury, Defendants were engaged in solicitation or service activities within this state.

9. All Defendants have had more than minimum contacts within the state of Florida, and such contacts are continuous and sufficient.

10. Venue is proper in the United States District Court in the Southern District of Florida inasmuch as the actions alleged herein accrued in Palm Beach County, Florida.

**General Allegations**

**A. Background of the Trusts**

11. In January of 2021, following the passing of a certain family member, Jesse Erdle ("Trustee") received notice that his children were named beneficiaries of the Jack A. Erdle Irrevocable Trust dated December 18, 2012 (the "Jack Erdle Trust"), and that separate trusts previously set up in their names would receive distributions.

12. Jesse Erdle was appointed Trustee of each of the Erdle Children Trusts, and ensured that the distributions would be properly apportioned to the separate trusts.

13. Those trusts are the Chloe Erdle Trust, Harrison Reed Erdle Trust and Samantha Ariel Erdle Trust (collectively, the "Erdle Children Trusts").

14. Trustee utilized the services of Kelly, his father's long-time trusted advisor at JPMC, to establish the individual accounts for the Erdle Children Trusts. This occurred shortly after Trustee relocated his family to Florida.

15. At all relevant times, Kelly was and is the Executive Director of the private banking location for JPMC in Rochester, NY. Kelly also serves as a client advisor in that capacity. Kelly provided private client services for Trustee and the Erdle Children Trusts, who were all located in Palm Beach County, Florida.

16. Trustee had a years-long banking history with JPMC, while utilizing Kelly's services.

17. Kelly had intimate knowledge of Trustee's banking activities, and was at all times aware of where Trustee resided and what email account Trustee would use to transact business with JPMC through Kelly.

18. As such, each of the Erdle Children Trusts were established and are maintained at JPMC.

**B. JPMC's Internal Breakdown Leading to Compromised Trust Accounts**

19. Being that JPMC is a national banking association with significant accounts maintained therein, it is required to exercised internal controls to prevent fraud and other malfeasance on its customers' accounts.

20. Such internal controls often require continuous control monitoring, the implementation of robust security protocols and safeguards, internal monitoring and auditing and other control activities.

21. When customers, such as Trustee, employ the services of JPMC and its private advisors such as Kelly, they do so with the beginning understanding that their funds will be secure as a result of the internal controls and other mechanisms employed to guard against fraud.

22. As stated previously, Trustee has worked almost exclusively with Kelly when managing his personal, and all Erdle Children Trust accounts.

23. Upon working with Kelly, Trustee updated his home address with JPMC to his new Florida address.

24. In August of 2020, Kelly contacted Trustee so that Trustee could open and establish the Erdle Children Trusts with JPMC. As a prerequisite to opening these accounts, Kelly provided a checklist and other forms for Trustee to provide all required contact and other information. This included Trustee's current residential address, cell phone number and email.

25. Trustee had the Erdle Children Trusts linked to his customer profile so he could properly monitor them as Trustee.

26. For each account that Kelly opened, after all contact and other information was recorded, Kelly would advise Trustee that final opening documents were being sent to complete the process via DocuSign. These documents included a "Know Your Customer" form each and every time as it was a requirement for accounts to be opened.

27. Unbeknownst to Trustee, and as fully described herein, each and every time one of these DocuSign documents was executed and returned to JPMC, JPMC's internal system would

erase the new contact information of Trustee, and revert back to a New York address which was not used by Trustee for over a decade.

28. Shortly after establishing the Erdle Children Trusts, when Trustee first realized that he was not timely receiving paper statements, as well as other account related items such as debit cards and online access for all of the Erdle Children Trusts, he again inquired from Kelly for assistance. As previously stated, Kelly and JPMC were instructed to link the Erdle Children Trusts to Trustee's customer profile.

29. Trustee inquired from Kelly (and therefore JPMC) as to why certain documents for one trust were being received, while others were not. Moreover, Trustee sought an explanation as to why he could not access all of the Erdle Children Trusts' online platforms.

30. Over the duration of two years, following a multitude of calls with Kelly and others, JPMC finally explained to Trustee that due to an "administrative error" all Erdle Children Trusts were not properly linked to his online profile.

31. At the same time, Trustee was still sent paper statements. Of course, they did not make it to Trustee until several months after the fact due to JPMC's internal breakdown. It is especially noteworthy that, despite multiple requests by Trustee, Trustee did not receive any paper through the mail from JPMC from September of 2021 through approximately July of 2022.

32. Trustee kept JPMC and Kelly apprised of his address continuously, especially because he also used JPMC to secure a mortgage for the purchase of a new home in Florida in 2022. Nonetheless, JPMC's internal system continued to revert back to Trustee's former address in New York from over a decade before.

33. Inasmuch as JPMC could not correct its own security breakdown, Trustee requested that all documents be delivered electronically to him directly.

34. The pattern unfortunately continued.

35. Each time this would occur, Trustee contacted Kelly to inquire about why he was not receiving statements and other transmittals from JPMC. Moreover, Trustee contacted JPMC each time he would not receive confirmation of a transaction that he otherwise should have. JPMC's only explanation was that Trustee was doing something wrong. In fact, at one point, Trustee grew so desperate to cure this problem that he went to a local branch who stated they could not help because it needed to be handled by the same people Trustee had been already pleading with for assistance.

36. At the same time, Kelly's response was always the same – for whatever reason, the JPMC internal system would revert Trustee's contact information back to his original New York address, and unused email from years before. Kelly was well aware that Trustee had not used those addresses, and only knew from Trustee's current email and home addresses.

37. After multiple changes and reversions, Kelly and JPMC's only explanation that there was a glitch in their internal system.

38. Nonetheless, all information continued to be transmitted to Trustee's prior home address in New York, and to his prior email address he had not used for years.

39. This cycle of Trustee changing his contact information back to the current, and then a glitch reversing same change, continued to occur despite Trustees multiple complaints to Kelly and JPMC.

40. Unbeknownst to Trustee, his brother Brandon ("Brandon"), began obtaining Trustee's JPMC account(s) information as a result of the "glitch."

41. At the same time, Brandon had also gained access to Trustee's prior unused email address that JPMC continued to send sensitive account information to, despite Trustee's protestations, also as a result of the "glitch."

42. Trustee had no knowledge that Brandon, nor anyone else for that matter, gained access to a prior email he believed was shut down and no longer operable.

**C. Trustee Recognizes Potential Fraud and Investigates and Pleads for Assistance**

43. In April of 2022, Trustee began noticing suspicious activity on the trading account he used to help build wealth for his children.

44. Trustee undertook an investigation of the suspicious activity.

45. Trustee only later came to the realization that Brandon had gained access to the investment and bank accounts and was manipulating them. At that time, however, there was no explanation as to how or why.

46. Trustee only received the statements long after Brandon's activities due to JPMC's "glitch." As such, he could not learn about the malfeasance in real time.

47. Trustee then confronted Brandon, who shockingly confessed that over a period of weeks in April and May of 2022, he had gained access to the Erdle Children Trusts at JPMC and the investment account.

48. Brandon explained that he was behind the nefarious activity occurring (all in a very short time period) in the Erdle Children Trusts and investment account.

49. Stricken with grief, Brandon then committed suicide a few days later.

50. Following Brandon's death, Trustee uncovered the answers to the mystery surrounding the unauthorized fraud.

**D. The Sad Results of an Investigation, Without the Assistance of the Institution**

51. Shortly after his death, it became evident that Brandon had previously stolen Trustee's prior laptop containing his old email address, as well as Trustee's old phone where verifications would have been sent. Trustee's prior laptop was put in the mail to be shipped back to its manufacturer, however, Brandon apparently intercepted that shipment.

52. Armed with Trustee's old laptop, Brandon was able to gain access to the Erdle Children Trusts.

53. Due to the internal glitch with JPMC, Brandon was receiving all statements, emails and other information from JPMC with regard to the Erdle Children Trusts.

54. All the while Trustee had been pleading with Kelly and JPMC to fix the supposed "glitch." Unfortunately, it was this "glitch" that Kelly and JPMC were incredibly aware of that permitted the fraud to occur.

55. Based on what Trustee has been able to piece together, without the help of JPMC or Kelly, Brandon first gained access in early April of 2022 to the accounts and began making transfers out of the Erdle Children Trusts for his benefit.

56. As stated above, due to the JPMC "glitch" and inaction by Kelly despite multiple calls from Trustee expressing concerns, Trustee was not timely receiving his paper statements which would have reflected those transfers from the Erdle Children Trusts.

57. Also, Trustee could not have received the electronic statements because of the "glitch," which reverted everything back to Trustee's old email address.

58. Based on JPMC and Kelly's inaction and inability to rectify an easily fixable situation which resulted in a complete and total breakdown in keeping the Erdle Children Trusts secure, the Erdle Children Trusts experienced a combined total loss of $762,000.

59. Although Brandon was in fact a bad actor in this situation, it was ultimately the breakdown in JPMC's internal controls, and Kelly's indifference in rectifying the situation, that led to this unfortunate but preventable loss.

60. At every turn, JPMC's representative Kelly, and JPMC itself utterly failed to conduct a meaningful investigation and/or take steps to prevent the very quick but substantial fraud. While various representative said they would investigate and even coordinate amongst Defendants, it appears as though they did not and only chose to blame the Plaintiffs.

61. In sum, the Erdle Children Trusts were damaged as follows:

   a. Chloe Erdle Trust - $281,000.00.

   b. Harrison Erdle Trust - $200,000.00.

   c. Samantha Erdle Trust - $281,000.00.

62. All conditions precedent to this action have been performed, waived or otherwise satisfied.

63. The Plaintiffs have retained the services of Weiss Serota Helfman Cole & Bierman, P.L., and have agreed to pay its reasonable attorney's fees and costs incurred in connection with bringing this action.

**Count I – Gross Negligence (against JPMC)**

Plaintiffs, Chloe Erdle Trust, Harrison Erdle Trust, and Samantha Erdle Trust, hereby sue Defendant, JPMorgan Chase Bank, N.A., for damages as a result of its gross negligence, and reincorporate and realleges that allegations contained within paragraphs 1-63, as if fully restated herein:

64. As alleged herein, a composite set of circumstances, which, together, constitute an imminent or clear and present danger amounting to more than the normal and usual peril, existed

and were created as a result of JPMC's failure to cure its "glitch" despite repeated and numerous requests to do so.

65. JPMC was fully aware and possessed the requisite knowledge of imminent danger to the Erdle Children Trusts created as a result of its security breakdown and failure to rectify, and did nothing.

66. Such willful disregard for security evinces a conscious disregard of the consequences.

67. JPMC's gross negligence, willful indifference and ignorance of imminent danger with regard to its failure to protect the Erdle Children Trusts, has resulted in damages to Plaintiffs.

68. Such actions of JPMC are the actual and proximate causes of those damages.

WHEREFORE, Plaintiffs Chloe Erdle Trust, Harrison Erdle Trust, and Samantha Erdle Trust, by and through undersigned counsel, demands judgment against Defendant JPMC, for damages,[1] including pre-judgment and post judgment interest, and the granting of such other and further relief as deemed just and proper

## Count II – Negligence (against JPMC)

Plaintiffs, Chloe Erdle Trust, Harrison Erdle Trust, and Samantha Erdle Trust, hereby sue Defendant, JPMorgan Chase Bank, N.A., for damages as a result of its negligence, and reincorporate and realleges that allegations contained within paragraphs 1-63, as if fully restated herein:

69. Defendant JPMC owed a duty to the Erdle Children Trusts to fully secure their individual funds.

---

[1] Plaintiff reserves the right to seek leave to plead punitive damages, and does intend to do so.

70. As a part of this duty, JPMC should have maintained internal controls to protect against fraud.

71. As a result of JPMC's breakdown in internal controls, and a "glitch" that JPMC was continually notified about, Brandon was able to gain access and make substantial transfers out of the Erdle Children Trusts.

72. These transfers were not authorized by Trustee or any other person with lawful control over the Erdle Children Trusts.

73. As a result of JPMC's failure to protect and safeguard access to the Erdle Children Trusts, they were in fact damaged as described in paragraph 104.

74. The Erdle Children Trusts' damages were actually and proximately caused by JPMC.

WHEREFORE, Plaintiffs Chloe Erdle Trust, Harrison Erdle Trust, and Samantha Erdle Trust, demand judgment against Defendant JPMorgan Chase Bank, N.A., for damages, along with pre-judgment and post-judgment interest, and the granting of such other and further relief as deemed just and proper.

## Count III – Negligence (Against Kelly)

Plaintiff, Chloe Erdle Trust, Harrison Erdle Trust, and Samantha Erdle Trust, hereby sue Defendant, Patrick Kelly, for damages as a result of negligence, and reincorporate and realleges that allegations contained within paragraphs 1-63, as if fully restated herein:

75. Defendant Kelly owed the Erdle Children Trusts a duty to ensure security of their accounts.

76. Despite being given multiple notices that the security of those accounts was compromised due to the JPMC "glitch," Kelly failed to act diligently to protect the Erdle Children Trusts.

77. Rather than appropriately addressing Trustees very real and immediate concerns, Kelly brushed Trustee (and therefore the Erdle Children Trusts) off.

78. As a result of Kelly's inaction, the Erdle Children Trusts were damaged.

79. Kelly's inaction is the proximate and actual cause of those damages.

WHEREFORE, Plaintiffs Chloe Erdle Trust, Harrison Erdle Trust, and Samantha Erdle Trust, demand judgment against Defendant Patrick Kelly, for damages, along with pre-judgment and post-judgment interest, and the granting of such other and further relief as deemed just and proper.

## Count IV – Breach of Fiduciary Duty (against Kelly)

Plaintiffs, Chloe Erdle Trust, Harrison Erdle Trust, and Samantha Erdle Trust, hereby sue Defendant, Patrick Kelly, for damages as a result of breach of fiduciary duty, and reincorporate and realleges that allegations contained within paragraphs 1-63, as if fully restated herein:

80. As Trustee and the Erdle Children Trusts' private client advisor, Kelly owed fiduciary duties to the Erdle Children Trusts.

81. This is because the Erdle Children Trusts reposed confidence and trust in Kelly to act in their best interests, and properly address concerns – especially those concerns dealing with the security of funds.

82. Despite being given multiple notices that the security of those accounts was compromised due to the JPMC "glitch," Kelly failed to act diligently to protect the Erdle Children Trusts, thereby breaching his fiduciary duty.

83. Rather than appropriately addressing Trustees very real and immediate concerns, Kelly brushed Trustee (and therefore the Erdle Children Trusts) off.

84. As a result of Kelly's inaction, the Erdle Children Trusts were damaged.

85. Kelly's inaction is the proximate and actual cause of those damages.

86. WHEREFORE, Plaintiffs Chloe Erdle Trust, Harrison Erdle Trust, and Samantha Erdle Trust, demand judgment against Defendant Patrick Kelly, for damages, along with pre-judgment and post-judgment interest, and the granting of such other and further relief as deemed just and proper.

## JURY TRIAL DEMAND

Plaintiffs demand a trial by jury for all issues so triable

Dated this 23rd day of June, 2023.

**Weiss Serota Helfman Cole & Bierman**
*Attorneys for Plaintiffs*
2255 Glades Road, Suite 200E
Boca Raton, Florida 33432
Phone: (561) 835-2111

By: /s/ *Harrison R. DuBosar*
Howard D. DuBosar
Florida Bar No. 729108
Hdubosar@wsh-law.com
Kdoyle@wsh-law.com
Harrison R. DuBosar
Florida Bar No. 1002241
Hrdubosar@wsh-law.com
Tnovak@wsh-law.com